# Saffold *v.* Powell *et al.*

### *Swamp and Overflowed Lands.*

1. *The agents of the "swamp and overflowed lands" are entitled to equal
compensation.*—The agents appointed by the Governor of the State in 1860
to "select and determine by proof the swamp and overflowed lands within
the limits of this State," and the agents appointed by the same authority in
1869, to obtain a patent or patents from the Federal Government for the
land so selected, are entitled to equal shares of the money, appropriated for
the compensation of their services.

APPEAL from the Chancery Court of Montgomery.

Tried before the Hon. HURIOSCO AUSTILL.

The facts are stated in the opinion.

By an act of Congress of September 28th, 1850, a grant
was made to Alabama, as to the other states, of the swamp
lands of a certain description, within her limits, now known
as the "swamp and overflowed lands;" and afterwards cer-
tain rules and regulations were established for the selection
of such lands by agents of the State, and obtaining title
therefor, from the United States.   According to other acts of
Congress, when any of said lands had been entered by, or
sold to individuals after the passage of the act of 1850, and
before title was conveyed to the State, the State became
entitled to select and have other portions of the public domain
in lieu thereof.   And by operation of the second section of
the act of Congress, Chapter V, approved March 12th, 1860,
the right to select such swamp lands for Alabama was limited
to two years from the adjournment of the next session, to be
thereafter held of the legislature of the State,—a period
which expired in 1863.

In February, 1860, the legislature of this State authorized
and required the Governor to appoint such number of agents,
not less than three, as he might deem necessary—"to select
and determine, by proper proof, the swamp and overflowed
lands within the limits of this State"—and report the same
to the Governor, and when approved by him to communicate

the same to the commissioner of the general land office at Washington, and obtain patents therefor to the State of Alabama. Like duties were to be performed by them, in reference to the lands to be obtained in lieu of the swamp lands that had been sold or entered.

The compensation of these agents was to be paid out of the proceeds, realized by their services, and must not exceed twenty *per cent.* of such proceeds. And the Governor was authorized to remove any of them " who shall fail to perform their respective duties, and appoint others in their places as he may think best for the State." Under this act, and for compensation as specified, (20 per cent. of proceeds,) James R. Powell, Urban L. Jones, Daniel P. Forney and S. S. Houston were in April, 1860, appointed such agents, and entered into contract as such; and in the course of that year, they selected and determined by proper proofs and surveys, largely over 400,000 acres of such swamp and overflowed lands, reported the same to the Governor, and with his aid communicated information thereof to the commissioner of the General Land Office at Washington, early in January, 1861.

According to the testimony, out of a much larger quantity reported, 400,434 acres of such swamp lands were " surveyed selected, located and 'proved up" to the satisfaction of the commissioner, who promised to have the patents issued soon after, and to send them to the Governor, by Mr. Fitzpatrick, a senator of the State. This was not done, however. The secession of the State from the Union on the 11th of that month, and the war and other political events following thereupon, of course put a stop to further proceedings in that business.

In March, 1869, Gov. Wm. H. Smith appointed appellant, Saffold, attorney of the State to procure from the United States the patents, or a patent, to the State, of the swamp lands to which she was entitled. Saffold was then a practising lawyer residing in Washington; and by the 11th of July, 1870, he procured for the State patents for 392,719 acres of the 400,434 selected, reported and communicated by Powell and his associates.

Saffold acted as attorney only until July 2d, 1869. He testifies that then—" Governor Smith having fixed no compensation for my services, appointed myself and others, agents under said act of February 24, 1860, . . : and commissioned me as such agent of the same date." A con-

tract was at the same time entered into by which these persons engaged to perform the same services which that statute required of the agents authorized to be thereby appointed, and were to receive the compensation of twenty per cent. of the proceeds of the swamp lands they should as such agents acquire to the State. This was done without communication with Powell and the other agents.

Of the persons thus appointed, Saffold only rendered any service. After 1860, no other swamp lands than those reported by Powell and his associates, were ever surveyed, selected or communicated to the land office as belonging, under the act of 1850, to the State of Alabama. Only patents were obtained from the United States for the 392,719 acres, part of the quantity reported by the original agents. And all the services rendered by any other than the officers and employees of the General Government, in procuring these patents, were rendered by Saffold alone. Many other persons, though, had been concerned, or claimed to have been concerned in transacting the business relating to these swamp lands, and to be entitled to compensation.

A large quantity of these lands having been sold, Saffold, claiming twenty per cent. of the proceeds for himself, sued the State in the Chancery Court of Dallas county, and got a decree in 1874 for over $5,400; which has never been paid. No other person was made by Saffold a party to that cause. The present suit was also brought about that time, by Powell and his associates against the State, in Montgomery Chancery Court, by virtue of a statute authorizing it, and enacting that, by publication thereof all persons claiming an interest in the fund, should be required to appear, and by petitions, propound their claims (as many did), and litigate them therein. While this suit was pending, the State by act of March 22, 1875, appropriated $6,000, a little more than—but intended for—the twenty *per cent.* of the proceeds realized from the swamp lands, as compensation in full to all and every person entitled to any part of said twenty *per cent.*, and required all such persons within one year thereafter, "by petition or cross-bill," to cause their respective claims to be presented in this cause, and to submit themselves to the decrees of said Court of Chancery, on the pleadings so made; and in default of so presenting and thereafter prosecuting their said claims and demands in the manner prescribed by said act, "all such persons and parties and each of them, should be forever barred of all right to receive any part or portion of said money, or to receive any per centage thereon.

from the treasury of the State; *provided* that nothing in this act shall be so construed as to alter or affect in any way, any of the legal or equitable rights of any of the claimants to said fund at the date of its approval."

And by act of February 9, 1877, "all known claimants of said fund," including Saffold, Powell, Jones, Forney, and the heirs of Houston, having propounded their claims in said suit,—the State was withdrawn therefrom as a party, and it was enacted that the "suit may progress to final decree between the complainants therein and the other claimants as defendants, petitioning creditors or complainants in cross-bill, as they may elect, and the Chancery Court may in said suit determine the legality, justice and extent of the several claims to said funds, or any part thereof, . . provided that nothing in this act or the preceding acts on this subject shall alter or vary the legal or equitable rights of the said parties as between themselves." An appeal to this court was authorized.

The decree of the chancellor divided the fund in equal parts between Saffold, Powell, Jones, Forney, and the representatives of Houston; and from the decree Saffold took an appeal.

D. S. TROY, and BRAGG & THORINGTON, for appellant.

DAVID CLOPTON, for appellees.

MANNING, J.—We have carefully considered the able argument submitted for appellant, but can not yield our assent to its conclusions.

The claims of the parties are made under the act of Alabama of February, 1860. That provided for the selection from the public domain within this State, of the lands designated in the legislation of Congress, as "swamp lands," which were not ascertained, and were to be examined, proved and reported as such, by the agents to be appointed under that act, to the satisfaction of the land office at Washington. To the extent of 400,434 acres, this, according to the testimony, was done. Patents for this land were promised, by the Commissioner of the General Land Office, and doubtless would have been sent, but for the political events immediately succeeding. The patents afterwards issued in 1869–70, for 392,719 acres were for a portion of those same lands, without any new selection and report thereof by any agent of the State. As to those lands, Powell and his associates

[Saffold v. Powell.]

seem to have performed all that the law and contract required them to do, because it was all that could be done by them. They could do no more than prove the right of the State to the lands and demand the patents therefor, which they did do. To issue and deliver the patents, were duties of officers of the General Government, who were wholly beyond any control of the agents. We repeat that according to the evidence, Powell and his associates did all that it depended on them to do. True, that did not entitle them to the compensation stipulated for : because it was a condition of the contract that this should be paid only out of the proceeds of the lands. They agreed to make that contingent not only on their own performance of the duties they undertook, but on the performance by Government officials of their duties also. On the part of the agents themselves there was no delinquency in respect to the 400,434 acres. When, therefore, subsequently after the convulsions of the time were partially allayed, the patents for those lands were issued by the Government of the United States, to the State of Alabama, although another person was delegated to apply for and obtain them, it would not have been equitable in the State to refuse to make an allowance out of the proceeds of their sale, to the agents by whose exertions and at whose expense, the State had been enabled to obtain them. There is no mere sentiment in this view ; the agents are equitably entitled to compensation.

It does not follow, though, that Saffold, also, ought not to be paid for his services. They were those, chiefly, of an attorney. He was at first appointed as such. But there being no act of the legislature specially authorizing such an appointment and no provision of law for his compensation, it seems that to obviate this difficulty, it was determined to issue to him a commission as agent under the act of February, 1860. And we suppose, that to comply with the provision that there should be at least three agents to perform the duties under that act, other persons were appointed with him,—who never performed any service, while Saffold continued to act as attorney of the State in urging at Washington the issuance of the patents. Not only were the services contemplated by the act of February, 1860, for which twenty *per cent.* commissions were to be allowed, not performed, but they could not then be performed. The time within which the State might select the swamp lands had long before elapsed, and the act of February, 1860, had thus become inoperative.

[Yeatman v. Mattison.]

We do not doubt that Saffold diligently rendered valuable and able professional services, by request of the Governor; that the State has been profited by them and that he well deserves a larger sum as compensation than the amount allowed him by this decree. But it does not rest with this department of the Government.

Powell and his associates claim no advantage over each other in the distribution of the fund: it was not, therefore, error to divide what was allowed to them, equally among them. We think they were entitled to all that is adjudged to them by the decree. And they do not assign error to so much of the decree as allows Saffold an equal share with them. We therefore find no reason· for setting aside the decree of the chancellor, and it must be affirmed.

STONE, J., not sitting.